

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-12-00853-CR

Carlos **ZAMBRANO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 111th Judicial District Court, Webb County, Texas
Trial Court No. 2011CRM000635D2
Honorable Monica Z. Notzon, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  March 5, 2014

AFFIRMED

Appellant Carlos Zambrano, along with co-defendants Abraham Linares and Romeo Hinojosa, was charged with second-degree aggravated assault with a deadly weapon and first degree aggravated kidnapping of Nestor Abundez.  Zambrano was convicted of both counts and sentenced to fifteen years and twenty-five years confinement, respectively, and assessed a $10,000.00 fine in each cause.  On appeal, Zambrano argues (1) the trial court abused its discretion in allowing the State to proceed on a notice of enhancement filed shortly before the start of trial and (2) the State's comments during closing argument were improper and outside the scope of

permissible jury argument and violated his right to a fair trial. We disagree and affirm the judgment of the trial court.

<h2 style="text-align:center">FACTUAL BACKGROUND[1]</h2>

**A.    The Arrest**

At approximately 2:00 am, on May 2, 2011, Webb County Deputy Gerard Pecina was patrolling Highway 359 when he witnessed a green Expedition SUV traveling in excess of the marked speed limit. Deputy Pecina proceeded to follow the SUV into a subdivision, and ultimately initiated a stop. The SUV eventually came to a stop at a Valero gas station. Deputy Pecina testified that Hinojosa, the driver of the SUV, immediately exited the vehicle and began to approach Deputy Pecina's vehicle. When Deputy Pecina demanded identification, a very nervous Hinojosa provided a Texas identification card. Based on Hinojosa's edginess, Deputy Pecina ordered Hinojosa to wait by the front of the vehicle while Deputy Pecina attempted to identify the three other individuals in the SUV—Zambrano, Linares, and Abundez.

Sergeant Sanchez testified that when he arrived to assist Deputy Pecina, Hinojosa was already in the back of Deputy Pecina's vehicle. Pat-downs were conducted on the other men. Before starting the pat-down on Abundez, however, Abundez informed Deputy Pecina that he did not know the other individuals and that they had kidnapped him with a gun.[2] Deputy Pecina testified that Abundez appeared scared, frightened, and nervous. Sergeant Sanchez separated Abundez from the others and placed him in the back of his patrol car. Abundez then related to Sergeant Sanchez what happened, including being taken from his residence at gunpoint, that the firearm was thrown from the SUV by one of the men, and where it was thrown. Deputy Pecina

---

[1] All three defendants were tried together before one jury. Accordingly, the facts in this opinion, as well as the facts set forth in the opinions of Abraham Linares and Romeo Hinojosa, are identical.

[2] We note that neither Abundez, nor any of the defendants, spoke English. The officers' testimony included their translation of witnesses' statements. At trial, victim and witness statements were offered via a translator.

headed to the location where the gun was allegedly thrown and found a weapon, a loaded handgun magazine, and a gray-colored cell phone.

Zambrano, Hinojosa, and Linares were placed under arrest for the aggravated kidnapping of Abundez. Zambrano, Linares, and Hinojosa were each charged with second-degree aggravated assault with a deadly weapon and first-degree aggravated kidnapping. All three individuals were tried together and the jury trial began on Monday, October 15, 2012.

**B.      The Trial**

*1.      Nestor Abundez's Testimony*

The State's first witness was Abundez. Abundez testified that about 1:00 a.m. on May 2, 2011, he and his family, along with his brother's family, were at his house in Laredo, Webb County, Texas. Abundez testified that he went outside to investigate loud noises and saw a white Ford truck and two individuals honking the horn. When Abundez's wife walked outside their home with Abundez's cell phone, Abundez took the phone and instructed her to return to the house. Although he had never seen the two men before, Abundez walked towards the truck. According to Abundez, once he approached the truck, Zambrano struck him in the head with the handle of the pistol and then forced him into the vehicle. Shortly thereafter, the white truck met up with a green Ford Expedition, driven by Hinojosa, and Abundez was transferred to the Expedition. Abundez testified that while Hinojosa drove, Zambrano held a gun to him.

Abundez further testified that Zambrano, Linares, and Hinojosa were apparently looking for another individual named Pelon, a nickname for someone who is bald. Abundez, who was also bald, explained that he and his family had only lived in the house for a short period of time and to his knowledge, a person called Pelon lived in the house prior to Abundez.

During cross-examination, defense counsel suggested Abundez knew the two assailants and that all three men went to Linares's house to party and smoke marijuana when a fight broke

out. After questioning by defense counsel, Abundez acknowledged he had his cell phone prior to Zambrano and Linares taking it, but explained that he was too nervous to call anyone or use the phone. Defense counsel also argued the weapon actually belonged to Abundez and that it was thrown from the Expedition by Abundez. Abundez, however, denied owning or throwing the firearm located by Deputy Pecina.

### 2. *Christian Abundez's Testimony*

Abundez's brother, Christian Abundez, testified that after seeing his brother forced into the truck, he grabbed his keys and started chasing the white truck. At some point, the truck stopped at a creek and both Linares and Zambrano exited the vehicle. According to Christian, Linares hit him (Christian) in the back and Zambrano threatened him with a gun. Christian also testified a third person was driving the truck. At Abundez's request, Christian left to find their older brother, Jose.

Once Christian found Jose, they went back to the creek but no one was there. After driving around the area trying to find Abundez, they saw the commotion at the gas station. When questioned by defense counsel, Christian acknowledged seeing the same white truck, which had been in front of Abundez's residence and the one he had chased earlier, at the gas station, but did not notify the officers.

### 3. *Sergeant Rolando Elizalde's Testimony*

Although none of the defendants testified at trial, Sergeant Rolando Elizalde Jr. testified about the defendants' interviews taken shortly after their arrest.

With regard to Hinojosa's interview, Sergeant Elizalde testified Hinojosa told him that he was awakened by Linares, his son-in-law, at approximately 1:00 a.m. Hinojosa explained he was simply driving Linares and Zambrano around because he did not want Linares to get a ticket for the dark tint on his vehicle. Hinojosa also relayed that he did not know Abundez's name or

anything about him and that the other men called him "mojadito" or wetback. During cross-examination, Sergeant Elizalde acknowledged that Hinojosa seemed surprised the three were being held on kidnapping charges and asked the officer whether it was the "mojadito" that was making the allegation. Hinojosa also described the others as drunk.

While interviewing Hinojosa, Sergeant Elizalde observed that Hinojosa was very calm, but extremely concerned that his wife have access to the impounded truck so that she could be at work the following day. According to Sergeant Elizalde, it appeared to him that Hinojosa was more concerned about his truck being impounded than with the kidnapping charges.

When asked about Linares's interview, Sergeant Elizalde testified that Linares relayed that he and the others had been partying in the San Enriquez Subdivision before they picked up Abundez. As to his presence at the gas station, Linares explained they were meeting another person and that Abundez had only been with them for a short period of time when they were stopped by the deputy. Sergeant Elizalde testified that although Linares acknowledged knowing about the weapon, he never admitted ownership of the weapon.

Sergeant Elizalde further testified that immediately after beginning the interview, Linares told the officer that he was a confidential informant for other officers and that he wanted to talk in exchange for a "deal." Sergeant Elizalde described Linares as fidgety, always moving his legs, and at times crying. During testimony, Sergeant Elizalde described Linares as "look[ing] like a drug addict, fidgety and nervous."

Based on Linares's statement, Sergeant Elizalde testified that he requested a patrol officer travel to the San Enriquez Subdivision, but once there, that the officer did not find any evidence that a party took place. Sergeant Elizalde further explained that he even went back to the area the following day, but he likewise did not see any evidence suggesting a party.

On cross-examination, Sergeant Elizalde acknowledged Abundez was never searched because Abundez reported the kidnapping before the officers conducted the pat-down. Defense counsel also extensively questioned Sergeant Elizalde as to why the weapon was not fingerprinted arguing that it was the officers' failure to fingerprint the firearm that negated their ability to rule out Abundez as the owner of the firearm.

Regarding Zambrano's interview, Sergeant Elizalde testified Zambrano told him that he and Linares were at Hinojosa's and Linares's house that evening. They began partying around 10:00 p.m. and then went cruising to Los Presidentes and Southgate. They all ended up at "the ranch" and that was where they picked up Abundez.

During cross-examination of Sergeant Elizalde, defense counsel suggested that Zambrano was very drunk when he was arrested and that he had denied using the firearm. Once again, defense counsel attacked the officers' failure to fingerprint the firearm and Sergeant Elizalde indicated that Deputy Pecina made the decision whether to request fingerprint analysis. Additionally, in response to questioning by defense counsel, Sergeant Elizalde acknowledged that several rounds of ammunition were located in the impounded SUV, however they were a different caliber than the firearm collected by Deputy Pecina.

As a conclusion, Sergeant Elizalde opined that Zambrano, Linares, and Hinojosa's statements were conflicting.

### 4. *Deputy Gerard Pecina's Testimony*

Deputy Pecina's testimony included his initial stop of the vehicle and his actions in locating the firearm. Similar to the cross-examination of Sergeant Elizalde, defense counsel probed Deputy Pecina's rationale for failing to submit the firearm for fingerprint analysis. Deputy Pecina explained that he did not submit the firearm for testing because the location where it was found corroborated what Abundez, the victim, had reported. He continued that he was working an

abduction case, the victim identified the individuals, and he did not have any reason to believe analysis on the weapon would assist in the prosecution. Deputy Pecina acknowledged that no one requested the gray cell phone be fingerprinted or that additional tests be performed.

### C.     The Jury Verdict

Zambrano was convicted of second-degree aggravated assault with a deadly weapon and first-degree aggravated kidnapping. The jury sentenced him to fifteen years confinement in the Institutional Division of the Texas Department of Criminal Justice and a $10,000.00 fine on the aggravated assault and twenty-five years confinement and a $10,000.00 fine on the aggravated kidnapping. This appeal ensued.

Zambrano alleges the State failed to provide proper notice of enhancement and the prosecutor's closing argument exceeded the acceptable areas of proper jury argument. We first address Zambrano's allegation that the State failed to provide sufficient notice of their intent to proceed on an enhancement allegation.

PUNISHMENT PHASE NOTICE OF ENHANCEMENT

Zambrano argues the trial court abused its discretion in allowing the State to proceed on a notice of enhancement filed on Thursday, October 11, 2012 at 4:53 p.m., less than two business days, and four calendar days before the start of trial. Prior to the enhancement, Zambrano faced a penalty range, for the first-degree aggravated kidnapping, of "imprisonment in the Texas Department of Criminal Justice for life or for any term of not more than 99 years or less than 5 years." TEX. PENAL CODE ANN. §§ 12.32(a), 20.04(c) (West 2011). Based on the enhancement, the jury could elect to proceed on a minimum range of the punishment of fifteen years. *Id.* § 12.42(c)(1) (West Supp. 2013).

**A.      Notice of Enhancement**

The State is required to provide notice of their intent to use a defendant's prior convictions for enhancement purposes.  *Brooks v. State*, 957 S.W.2d 30, 33–34 (Tex. Crim. App. 1997) (reiterating enhancement paragraphs need not be pled in indictment); *accord Villescas v. State*, 189 S.W.3d 290, 292 (Tex. Crim. App. 2006).  "'The accused is entitled to a description of the judgment of former conviction that will enable him to find the record and make preparation for a trial on the question of whether he is the named convict therein . . . and if possible show there is a mistake in identity, or that there was no final former conviction or the like.'" *Villescas*, 189 S.W.3d at 293 (quoting *Hollins v. State*, 571 S.W.2d 873, 875 (Tex. Crim. App. 1978)); *accord Fairrow v. State*, 112 S.W.3d 288, 294 (Tex. App.—Dallas 2003, no pet.).

While notice must be pled in some form, "due process does not even require that the notice be given before the guilt phase begins, much less that it be given a number of days before trial." *Villescas*, 189 S.W.3d at 293–94 (disavowing the requirement of notice ten days prior to trial); *Brooks*, 957 S.W.2d at 33.  Under a due process analysis, the issue is "whether appellant received sufficient notice of the enhancements so that he had an opportunity to prepare a defense to them." *Pelache v. State*, 324 S.W.3d 568, 577 (Tex. Crim. App. 2010).

An appellate court "look[s] to the record to identify whether appellant's defense was impaired by the timing of the State's notice." *Id.*  Asking for a continuance, without an explanation as to why, is not sufficient.  When a defendant has no defense to an enhancement allegation and makes no suggestion of the need for a continuance in order to prepare a defense, notice given at the beginning of the punishment phase satisfies the due process requirements of the United States Constitution as well as the Texas Constitution's due course of law requirements. *Villescas*, 189 S.W.3d at 294; *Mayfield v. State*, 219 S.W.3d 538, 540 (Tex. Crim. App. 2007).

**B.      Zambrano's Objection**

On Monday morning, October 15th, prior to the start of trial, Zambrano's counsel objected

to the State's notice of enhancement.

> Counsel:     Your Honor, one more thing for the record.  Although I kind of feel how Your Honor – I did want to object, Your Honor, for the record, we are given the State's notice of intent to enhance punishment.  We were served with it yesterday, and I believe that it's based on surprise.  And we, therefore, object on that grounds and ask for a continuance based on that.
>
> Court:     That's denied and motion for continuance is denied.
>
> Court:     I did take a look at your objection to the State's enhancement paragraph.
>
> I'm not sure if you have anything else to offer.  I'm denying the motion, and I [am] allowing them to go forward on the punishment.  I need your client to plead true or not true.

Prior to the start of the evidence, counsel did not lodge any additional objection or request.

On October 18, 2012, prior to the close of testimony on the guilt-innocence portion of the trial,

Zambrano's counsel filed a motion to disregard the State's notice of enhancement.

> Defendant, Carlos Zambrano, objects to State Notice of Enhancement on the Grounds of Surprise and insufficient notice.  In support, Counsel moves the court to look at *Hernandez*, 914 S.W.2d 226, 228, the holding being, ". . . 3 [days] notice over a week end is presumptively unreasonable."  Here, notice was given on Friday, the weekend before trial, and should be considered untimely on those grounds.
>
> Defendant prays that the State's notice of enhancement be found to be untimely and not reasonable notice as required by Hernandez.

After the jury returned a guilty verdict but before the start of the punishment, Zambrano's counsel

again raised the State's late notice.

> Counsel:     Judge, I have one more thing.  Your Honor, with respect to my client, Mr. Zambrano, Judge, I'd like for the Court to move to strike the notice of enhancement filed by the State, Judge, based on surprise and untimeliness that it was filed, Your Honor.  I have case law to support my argument.  I can tender it to Your honor if Your Honor wants to see it.
>
> Court:     Okay.  That would come in only if he is found guilty, wouldn't it?

> Counsel: Yes. It would, Judge. The conviction that he has was transporting a young lady to San Antonio.
>
> Court: What I'm saying is, do you want to argue your motion now? Or do you want to wait to [see] if we get to the punishment phase?
>
> Counsel: Well, I just don't want the Court to think that I'm not waiving that.
>
> Court: No. I know that you filed that. The objection to the enhancement, I received it.

Zambrano subsequently entered a plea of true to the enhancement allegation.

## C. Analysis

We note that Zambrano asserted no defense to the enhancement allegation and his objection was simply a request for more time, without an explanation as to why. *See Villescas*, 189 S.W.3d at 294. We agree that the State should provide timely and adequate notice of any intent to enhance the punishment for a defendant. *Brooks*, 957 S.W.2d at 33–34. Yet, on this record, the State provided notice before the start of the guilt-innocence phase of the trial and, although protests were made for timeliness or "surprise," no suggestion was made that a continuance was required for discovery or preparation of a defense to the enhancement. *See Villescas*, 189 S.W.3d at 294–95; *Garza v. State*, 383 S.W.3d 673, 676–77 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (reinforcing the appellant "[did] not contend on appeal that he [had] any possible basis for challenging the State's evidence of the prior conviction). Accordingly, we cannot conclude the trial court's denial of Zambrano's objections was in error and we overrule this issue.

## IMPROPER JURY ARGUMENT

Zambrano next asserts the prosecutor's comments during closing argument were improper and outside the scope of permissible jury argument and violated his right to a fair trial.

## A. Proper Jury Argument

"The purpose of closing argument is to facilitate the jury's proper analysis of the evidence presented at trial in order to arrive at a just and reasonable conclusion based solely on the evidence." *Harris v. State*, 122 S.W.3d 871, 883 (Tex. App.—Fort Worth 2003, pet. ref'd).

"[P]roper jury argument generally falls within one of four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement." *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008); *see also Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000) (same); *Coble v. State*, 871 S.W.2d 192, 204 (Tex. Crim. App. 1993) (same). A prosecuting attorney is permitted to draw from the facts in evidence all inferences which are reasonable, fair, and legitimate, but he may not use the jury argument to get before the jury, either directly or indirectly, evidence which is outside the record. *Borjan v. State*, 787 S.W.2d 53, 57 (Tex. Crim. App. 1990) (citing *Jordan v. State*, 646 S.W.2d 946, 948 (Tex. Crim. App. 1983)). Comments which appear to cast aspersions on the character of defense counsel, and as a result, "strike over counsel's shoulders at the defendant," are not within the zone of proper jury argument. *Nevels v. State*, 954 S.W.2d 154, 158 (Tex. App.—Waco 1997, pet. ref'd).

When jury argument falls outside the approved areas, "it will not constitute reversible error unless [it] is extreme or manifestly improper . . . or injects new facts harmful to the accused into the trial proceeding." *Temple v. State*, 342 S.W.3d 572, 602–03 (Tex. App.—Houston [14th Dist.] 2010), *aff'd*, 390 S.W.3d 341 (Tex. Crim. App. 2013); *see Brown*, 270 S.W.3d at 570; *see also* TEX. R. APP. P. 44.2(b). The Court of Criminal Appeals also consistently rejects arguments that "strike at a defendant over the shoulder of his defense counsel." *Dinkins v. State*, 894 S.W.2d 330, 357 (Tex. Crim. App. 1995). Although articulating precise rules is difficult, the court has cautioned that "a prosecutor runs a risk of improperly striking at a defendant over the shoulder of counsel when the argument is made in terms of defense counsel personally and when the argument explicitly impugns defense counsel's character." *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). Even when couched in terms of a rebuttal, proper defense counsel's arguments "cannot serve as a basis for permitting prosecutorial comments that 'cast aspersion on defense

counsel's veracity with the jury.'" *Cole v. State*, 194 S.W.3d 538, 544 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (quoting *Mosley*, 983 S.W.2d at 259); *accord Dinkins*, 894 S.W.2d at 357.

## B.     Zambrano's Preservation of Error

In order to preserve any error based on improper jury argument, the defendant must object to the argument and pursue the objection until the trial court rules adversely. TEX. R. APP. P. 33.1(a); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). The objection must be "a timely, specific request that the trial court refuses." *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004).

The State contends that Zambrano failed to preserve any alleged error with regard to the State's closing argument in two different ways: (1) co-counsel, and not Zambrano's counsel, made the objections before the trial court, and (2) although the trial court provided an instruction to disregard, Zambrano failed pursue the objection to an adverse ruling. TEX. R. APP. P. 33.1(a). We address each separately.

### 1.     *Reliance on Co-Defendant's Counsel*

As the State points out, Zambrano's counsel did not object before the trial court. Zambrano's counsel apparently relied on the objections lodged by his co-defendant's counsel. However, to preserve error, a defendant is generally unable to rely on an objection made by a co-defendant's counsel, without voicing his own personal objection. *Martinez v. State*, 833 S.W.2d 188, 191 (Tex. App.—Dallas 1992, pet. ref'd) (citing *Lerma v. State*, 679 S.W.2d 488, 498 (Tex. Crim. App. 1982)). To do so, defense counsel, or the defendant himself, may adopt a co-defendant's objection and preserve error "when there is sufficient indication in the record of his intent to adopt the objection." *Martinez*, 833 S.W.2d at 191; *accord Woerner v. State*, 576 S.W.2d 85, 86 (Tex. Crim. App. 1979); *Enlow v. State*, 46 S.W.3d 340, 346 (Tex. App.—Texarkana 2001,

pet. ref'd) ("A co-defendant may adopt the objection of his fellow defendant, but that adoption must be reflected in the record.").

Here, Zambrano and his counsel were silent during the objections lodged by his co-defendant's counsel. Although the record reflects that Zambrano's counsel deferred to Linares's counsel for closing argument, there is nothing in the record to reflect Zambrano's counsel joined in the objections lodged by Linares's counsel. Therefore, we must conclude that Zambrano and his counsel failed to preserve any objection to the State's jury argument. *Uyamadu v. State*, 359 S.W.3d 753, 767–68 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

### 2. *Compliance with Texas Rule of Appellate Procedure 33.1(a)*

In addition to objecting, before complaining about improper jury argument on appeal, an accused must pursue his objection to an adverse ruling or he forfeits his right to complain about the argument on appeal. TEX. R. APP. P. 33.1(a); *Mathis v. State*, 67 S.W.3d 918, 926–27 (Tex. Crim. App. 2002) (reiterating test set out in *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996)).

Here, Linares's counsel lodged several objections. But counsel only requested an instruction to disregard the first argument. And even then, when the objection was sustained, an instruction was given but neither Linares's defense counsel nor Zambrano's defense counsel sought a mistrial. Accordingly, we conclude that Zambrano failed to properly preserve error.

Assuming, arguendo, the argument was preserved, we turn to the merits of Zambrano's complaint regarding the State's jury argument.

## C. Objections to the State's Jury Argument

Because Zambrano raises different objections within the State's closing, we address each individually.

*1.    Video*

Zambrano first argues the prosecutor attempted to shift the burden of proof to the defense and made disparaging remarks about defense counsel.  The State counters the prosecutor's statement—that defense counsel did not know how to offer evidence—was not directed at the ethical integrity or essential functions of defense counsel and was not calculated to draw distinctions between the prosecution and the defense counsel.  To the contrary, the State contends the prosecutor's remark was an invited response to the following defense argument.

> *Defense Closing*
> Defense:   What did they bring?  They brought Nestor's uncorroborated story, his brother, a gun of unknown origin or handling, telephones of unknown origin or handling, and bullets from [a] gun not in evidence.  I could have showed you a video, but they refused.
> State:        Objection.
> Court:        [That is] in violation of the motion in limine.  I'm going to take time off your closing arguments. . . . I don't want to get into areas that are improper.
>
> *State Rebuttal*
> State:        Now, ladies and gentlemen, the Defense wants you to believe that I tried to keep out this video.  They brought this out twice during their closing.  Ladies and gentlemen, there are rules of evidence, certain things come in and don't, and if defense attorney doesn't know how to bring in the evidence, that's not the State's fault.

A prosecutor may properly comment on a defendant's failure to produce evidence, as long as the remarks do not fault the defendant for failing to testify.  *See Jackson v. State*, 17 S.W.3d 664, 674 (Tex. Crim. App. 2000); *Patrick v. State*, 906 S.W.2d 481, 491 (Tex. Crim. App. 1995).  An appellate court looks at the challenged language from the jury's standpoint and determines whether the comment "was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify."  *Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001).  Reversal is not required where the language

can be reasonably construed as referring to a defendant's failure to produce testimony or evidence from sources other than himself. *Livingston v. State*, 739 S.W.2d 311, 338 (Tex. Crim. App. 1987).

Here, the prosecutor's remarks were clearly directed at defense counsel's closing argument. *See Caron v. State*, 162 S.W.3d 614, 618 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (concluding that State's remarks about appellant's right to call alibi witnesses constituted permissible argument and did not shift the burden of proof to appellant); *Sanders v. State*, 74 S.W.3d 171, 173 (Tex. App.—Texarkana 2002, pet. ref'd) (holding prosecutor's remark that "the defense could have subpoenaed [alibi witness] to testify if in fact he had been the one driving, and the defense had failed to do so" was permissible jury argument). Furthermore, based on the trial court's response that the comment violated the motion in limine, defense counsel was aware that any argument regarding the video was off limits. Accordingly, the prosecutor's remarks regarding the video were not improper.

### 2. Tactics/Smoke and Mirrors

Zambrano next points to the prosecutor's use of terms like "tactics," "smoke and mirrors," and "hide the ball" to attack defense counsel and his role in ethically representing his client.

| | |
|---|---|
| State: | Ladies and Gentlemen, let's look at the tactics employed here. Tactic number one, put the victim on trial. The victim is on trial here. What does he try to do? Call him a drug dealer. Call him a drug user. The victim is not on trial. This is called smoke and mirrors, hide the ball, distract, look over there because G-d forbid you notice the truth. |
| | . . . . |
| | Now, tactic number two, attack the district attorney by claiming that I somehow threated the victim to testify. You've heard him. I never offered him. I never promised anything, and I didn't threaten him. |
| Defense: | Objection, Your Honor. |
| Court: | Overruled. The jurors know what the evidence is. Let's move on. |

Terms such as "rabbit trails" and "smoke screens" have been considered proper in reference to defense evidentiary tactics. *Mosley*, 983 S.W.2d at 260 (determining no harm in "[defense

counsel] want[s] you to take a side road, a series of side roads, rabbit trails, and a rabbit trail that will lead you to a dead-end"); *see also Pope v. State*, 161 S.W.3d 114, 126–27 (Tex. App.—Fort Worth 2004), *aff'd*, 207 S.W.3d 352 (Tex. Crim. App. 2006) (holding "smoke and mirrors," "red herrings or rabbit trails" were response to arguments of defense counsel), *Cole*, 194 S.W.3d 547 (concluding "another trick" was not an improper response to defense argument); *Banks v. State*, 643 S.W.2d 129, 134 (Tex. Crim. App. 1982).

Similar to the present case, in *Beasley v. State*, 864 S.W.2d 808, 811 (Tex. App.—Fort Worth 1993), *aff'd*, 902 S.W.2d 452 (Tex. Crim. App. 1995), the prosecutor argued "but you can see through the clouds of the smoke screen by a very clever Defense attorney." The *Beasley* remarks, like in this case, were also made in response to defense counsel's attack of the victim. In declining to find improper jury argument, the court held the prosecutor's argument properly responded to defense counsel's argument "that sought to place emphasis on the character of the victims rather than the acts of the defendant." *Id.* at 812.

Although Zambrano points this court to *Lopez v. State*, 705 S.W.2d 296 (Tex. App.—San Antonio 1986, no pet.), for authority, the case is inapplicable to the present case. In *Lopez*, the prosecutor continuously exceeded the bounds of acceptable jury argument by referencing withheld evidence, giving his personal assurance of the defendant's guilt, and "invit[ing] the jury to speculate as to evidence not in the record." *Id.* at 298. The record simply does not support similar behavior by the prosecutor. Here, defense counsel accused Abundez of making up the alleged incident and suggested the alleged attack was associated with Abundez's gang affiliation, the events were the result of an ongoing fight, and that Abundez had been smoking marijuana on the night in question. Accordingly, we conclude the State's arguments were in response to defense counsel's closing arguments and were not improper.

### 3.     Defense Counsels' Conversation with Abundez

Zambrano next adopts the argument made in Linares's appellate brief regarding comments

made by the State regarding the attorneys trying to convince Abundez not to testify.  Zambrano

contends (1) "the State struck at [Zambrano] over the shoulders of his counsel" by suggesting

counsel acted in bad faith by attempting to persuade Abundez not to testify; (2) "the prosecutor

injected a new and harmful fact in closing argument" never testified to by Abundez; and (3) even

assuming defense counsel's question during cross-examination was improper, the trial court's

instruction was sufficient and, therefore, the State's argument was not invited.

*Abundez Cross-Examination*

Defense:   And so when you and I met and spoke 2 or 3 days ago, when you told me that you were afraid that they would charge you with the offense, you were lying to me?

The State objected and the following was argued *out of the presence of the jury*.

State:     This statement that we're going to charge him with an offense, this is ridiculous Your Honor.

Defense:   That's what he told me.

State:     It is utterly ridiculous, Your Honor.  It's the most disgusting behavior I've ever seen in a Defense counsel ever.
. . . .
And, Your Honor, I want everything stricken about the statement, threatening to arrest or charge this victim, the victim, mind you, with anything.
. . . .

Court:     Again, I'll remind the jury to disregard any statements made in conjunction with the previous one that I asked you to disregard the District Attorney's Office and the allegations of his conduct.  Let's proceed.

Upon further cross-examination, Abundez denied that he was afraid of being charged with

any offense by the State.  "The only thing I said was that I did not want to come."

*State's Jury Argument*

State:     Then you heard the victim, all three of them went to his house on Friday before trial to try and convince him not to testify.

Defense:   Objection, Your Honor.  That leaves a false impression with the Jurors with the lawyers, not the clients.

State:     I'm sorry. The three attorneys. The three attorneys went to this person's house to try to get him not to testify the Friday before trial.

Defense:   Objection, Your Honor.

Court:     Sustained.

Defense:   It mischaracterizes the evidence. Nobody tried to get him not to testify.

Court:     All right. Move on.

            . . . .

State:     What [defense attorneys] say is not evidence as much as they'd like for it to be.

Defense:   Objection, Your Honor. It switches the burden.

Court:     Sustained. Move on.

Zambrano relies on *Wilson v. State*, 938 S.W.2d 57 (Tex. Crim. App. 1996), *abrograted on other grounds*, *Motilla v. State*, 78 S.W.3d 352 (Tex. Crim. App. 2002), for support. The argument in *Wilson* focused on a portion of the State's argument.

> I have taken a very sacred oath, in my opinion, to see that justice is done in every case I prosecute. It is your duty—and in the last paragraph of this charge you can see—to see that justice is done in this case.

> [Defense Counsel] has no such oath, and what he wishes is that you turn a guilty man free. That's what he wishes, and he can wish that because he doesn't have the obligation to see that justice is done in this case.

*Id.* at 58. The court concluded that because the case did not include any evidence of the prosecutor's oath, the State's argument injected new facts into the case and therefore the argument was harmful to the defendant. *Id.* at 60.

The State's argument in question is not akin to *Wilson*. Here, during cross-examination of the State's key witness, defense counsel suggested (1) that Abundez had been coerced and threatened by the State regarding his testimony and (2) that Abundez was lying about the events that evening. The State objected at the time and received an instruction from the trial court.

Given that defense counsel raised the issue before the jury, unlike the State's argument in *Wilson*, it was the defense that placed the issue of their speaking to Abundez "2 or 3 days" before the start of the trial. *Id.* When the State attempted to respond to the defense questions during her closing argument, the trial court ultimately sustained the defense objection and instructed the State

to "move on." We, therefore, conclude the State's argument responding to defense counsel's argument that the State was threatening Abundez to testify and that Abundez was lying regarding the alleged events was not improper. *See Alami v. State*, 333 S.W.3d 881, 892–93 (Tex. App.—Fort Worth 2011, no pet.); *Caron*, 162 S.W.3d at 618.

Even if a prosecutor's argument was improper, the appellant still bears the burden to prove the error affected his substantial rights. TEX. R. APP. P. 44.2(b); *Freeman v. State*, 340 S.W.3d 717, 728 (Tex. Crim. App. 2011).

### 4. *Harm Analysis*

When jury argument falls outside the approved areas, "it will not constitute reversible error unless [it] is extreme or manifestly improper . . . or injects new facts harmful to the accused into the trial proceeding." *Temple*, 342 S.W.3d at 602–03; *see* TEX. R. APP. P. 44.2(b). In determining whether the prosecutor made an improper jury argument, the reviewing court considers (1) "[the] severity of the misconduct (prejudicial effect [of the prosecutor's remarks]), (2) curative measures, [and] (3) the certainty of conviction absent the misconduct." *Martinez v. State*, 17 S.W.3d 677, 692–93 (Tex. Crim. App. 2000); *accord Mosley*, 983 S.W.2d at 259.

We, therefore, turn to the trial court's instruction for the jury to disregard the prosecutor's comments regarding the alleged video. "Ordinarily, any injury from improper jury argument is obviated when the court instructs the jury to disregard, unless the remark is so inflammatory that its prejudicial effect cannot reasonably be removed by such an admonishment." *McKay v. State*, 707 S.W.2d 23, 37 (Tex. Crim. App. 1985); *accord Long v. State*, 823 S.W.2d 259, 269–70 (Tex. Crim. App. 1991); *Kelly v. State*, 321 S.W.3d 583, 597–98 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Because the record does not support the conclusion that the remark was so inflammatory as to not be curable, we conclude the trial court's instruction to disregard sufficiently negated any alleged injury.

Finally, with respect to the remaining defense objections, the trial court sustained the objections and the attorneys were instructed to "move on." The jury was in a position to "evaluate the truthfulness of the prosecutor's assertion[s]" and the trial court's reactions would lead a reasonable jury to place little or no credibility on the prosecutor's statements. *See Mosley*, 983 S.W.2d at 260. Like in *Graves*, this case "largely turn[ed] on credibility," and any inappropriate comments by the prosecutor could not have caused a different result. *Id.*

Accordingly, even assuming that some portions of the State's closing argument exceeded the areas of acceptable argument, we conclude that Zambrano failed to show his substantial rights were affected. We, therefore, overrule this issue.

## CONCLUSION

Although the State provided timely and adequate notice of any intent to enhance the punishment for a defendant, Zambrano failed to argue his continuance was not simply based on timeliness, but was instead required for discovery or preparation of a defense to the enhancement. *See Villescas*, 189 S.W.3d at 294–95; *Garza*, 383 S.W.3d at 676–77. Most importantly, Zambrano asserts no defense to the enhancement. Accordingly, we conclude the trial court did not err in denying Zambrano's objections with regard to the State's notice of enhancement.

Additionally, assuming Zambrano's complaint regarding the State's improper jury argument was preserved, he failed to show error. The remarks regarding the video were clearly directed at defense counsel's closing argument, to which the prosecutor objected when the comment was made and defense counsel was aware that argument regarding the video was off limits. *See Caron*, 162 S.W.3d at 618. The comments with regard to the tactics and smoke and mirrors comments were a permissible response to defense's allegations that Abundez lied about the alleged attack. And, finally, with regard to defense counsel attempting to influence Abundez's testimony, the State's argument responding to allegations that the State was threatening Abundez

to testify and that Abundez was lying regarding the alleged events was permissible. *See Alami*, 333 S.W.3d at 892–93; *Caron*, 162 S.W.3d at 618. Moreover, even assuming the closing argument exceeded the areas of acceptable argument, Zambrano failed to show his substantial rights were affected.

Accordingly, Zambrano's issues on appeal are overruled and we affirm the trial court's judgment.

Patricia O. Alvarez, Justice

PUBLISH