# NO. 12-14-00368-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JOHN CALVIN MARSHALL,*<br>*APPELLANT* | § | *APPEAL FROM THE 294TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *VAN ZANDT COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

John Calvin Marshall appeals his conviction for burglary of a habitation. Appellant was sentenced to imprisonment for twenty-five years and fined $10,000. Appellant raises five issues on appeal. We affirm.

## BACKGROUND

Late one Saturday morning, Appellant stopped by the home of Kay Jackson[1] and walked in through her unlocked back door without permission.[2] Appellant knew Jackson casually through her previous work cleaning his home and her current employment as a dental assistant at his dentist's office.

Jackson heard the door open and close, and was shocked to find Appellant in her living room. Jackson asked Appellant to leave. But Appellant forced her into a bedroom, undressed her, and pushed her onto the bed. Appellant attempted to penetrate Jackson but could not achieve an erection. Appellant then left Jackson's home.

---

[1] A pseudonym.

[2] Because Appellant has not challenged the legal sufficiency of the evidence, we use Jackson's version of the events. We note, however, that Appellant testified at trial that Jackson was a willing participant in the sexual encounter between the two.

Jackson was upset and angry, but initially resisted contacting the police out of fear that she would not be believed. Her son's partner contacted the police on her behalf, and she eventually told them that Appellant had sexually assaulted her. Appellant was charged with burglary of a habitation.[3]

At trial, Appellant claimed that Jackson had winked at him at the dentist's office, and that he went to her home to "see what the wink was about." He urged jurors to find him not guilty because the sexual encounter with Jackson was consensual. They instead found Appellant guilty and assessed his punishment at imprisonment for twenty-five years and a fine of $10,000. The trial court sentenced Appellant in accordance with the jury's verdict. This appeal followed.

## MOTION TO SUPPRESS EVIDENCE

In his first issue, Appellant contends that the trial court erred in denying his motion to suppress statements that he made after he was arrested.

### Standard of Review and Applicable Law

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). A trial court's decision to grant or deny a motion to suppress is generally reviewed under an abuse of discretion standard. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). We give almost total deference to a trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor, and review de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor. *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008). When ruling on a motion to suppress evidence, the trial court is the exclusive trier of fact and judge of the witnesses' credibility. *See Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). Accordingly, a trial court may choose to believe or disbelieve all or any part of a witness's testimony. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). When there is not an express finding on an issue, we infer implicit findings of fact that support the trial court's ruling as long as those findings are supported by the record. *See Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010).

---

[3] Specifically, Appellant was charged with intentionally or knowingly entering a habitation without consent and committing or attempting to commit a sexual assault. *See* TEX. PENAL CODE ANN. § 30.02 (West 2011).

2

The prevailing party is entitled to "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011). We review the trial court's legal conclusions de novo and uphold the ruling so long as it is supported by the record and correct under any legal theory applicable to the case. *State v. Iduarte*, 268 S.W.3d 544, 548 (Tex. Crim. App. 2008); *Banda v. State*, 317 S.W.3d 907, 907-08 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

In order for a statement taken from a person in custody to be admissible in court, the investigating officer must advise the suspect that he has the right to remain silent, that any statement he makes can be used against him, and that the person has a right to an attorney before the statement is taken. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694 (1966). Texas has a more specific rule, requiring that the *Miranda* warnings be given, that the suspect be told that he may terminate the interview at any time, and that statements be recorded or that the person sign a written statement. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (West Supp. 2015). Generally, a statement obtained from a custodial interrogation that does not comply with these rules cannot be used in a trial. *See Miranda*, 384 U.S. at 444, 86 S. Ct. at 1612; TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2(a), (b).

A suspect has a Fifth Amendment right to interrogation counsel, and a defendant has a Sixth Amendment right to trial counsel. *Pecina v. State*, 361 S.W.3d 68, 72 (Tex. Crim. App. 2012). "[T]he Fifth Amendment right to interrogation counsel is triggered by the *Miranda* warnings that police must give before beginning any custodial questioning[,]" and "[t]he Sixth Amendment right to trial counsel is triggered by judicial arraignment or Article 15.17 magistration." *Id*. Interrogation refers both to express questioning and "words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S. Ct. 1682, 1689-90, 64 L. Ed. 2d 297 (1980). Booking questions do not constitute interrogation. *See Cross v. State*, 144 S.W.3d 521, 524-25 (Tex. Crim. App. 2004).

The invoking of one's right to counsel protects the person from police interrogation, but a person's voluntary statements made without police interrogation can still be admissible. *See State v. Foster*, No. 05-08-01302-CR, 2009 WL 2414485, at *7 (Tex. App.—Dallas 2009, pet. ref'd). For a police recording of one's telephone conversation to be suppressed, the police

intrusion must be unreasonable in violation of the Fourth Amendment. *Id*. at *6 (citing *Richardson v. State*, 865 S.W.2d 944, 948 (Tex. Crim. App. 1993)). As most relevant here, for the police intrusion to be unreasonable, the person who is the object of the intrusion must have had a reasonable expectation of privacy. *State v. Granville*, 423 S.W.3d 399, 405 (Tex. Crim. App. 2014). A person has a reasonable expectation of privacy when he has a subjective expectation of privacy and this expectation of privacy is one that society recognizes as reasonable and legitimate. *Id*. at 405-06.

**Application**

After Appellant's arrest, Detective Michael King of the Canton Police Department brought him into his office for booking and to attempt an interview. Unbeknownst to Appellant, King recorded the conversation.

King told Appellant that he needed to do some paperwork and then they would "see about what's going on." Without prompting from King, Appellant stated, "This is going to have to be about [Kay Jackson]. Right?" King told him that he would speak to him about that in a moment. He asked Appellant some basic booking questions. After obtaining the booking information, King read Appellant the required warnings and asked whether he would waive his rights and talk to him. Appellant decided that he needed an attorney. King did not ask any questions regarding the incident with Jackson.

Appellant then asked King if he had a certain attorney's phone number, and King allowed him to attempt to call him. King told Appellant that he was not going to question him if he wanted to speak to an attorney first. He told Appellant that the alleged victim's name and also told him that a pseudonym was used in the paperwork. King went over some procedural details with Appellant, and, in doing so, told Appellant not to contact Jackson or go by her residence. Appellant then stated that he had gone by Jackson's residence that day and her son "throwed some kind of fit" and said "You've got to talk to me."

While King continued typing the booking paperwork, he allowed Appellant to call his wife. King was in the room and was able to hear Appellant's portion of the conversation. Appellant told his wife that he knew what the charge was about, but he did not understand it. He said that Jackson had invited him to come by her house, and he did. Appellant speculated that Jackson might have "gone off the deep end" or something.

Appellant filed a pretrial motion to suppress his statements, claiming that they were obtained in violation of the United States and Texas Constitutions and the Texas Code of Criminal Procedure. After a hearing, the trial court denied the motion. On appeal, Appellant argues that the trial court should have suppressed the statements because King violated his right to have all interrogation cease by continuing to record him after his request for counsel.

Appellant does not argue that King offered him any assurance of privacy in making his statements. Appellant never requested privacy to make the telephone calls and gave no apparent indication that he was attempting to have the substance of the telephone calls remain private. Under these circumstances, Appellant had no legitimate expectation of privacy. *See State v. Scheineman*, 77 S.W.3d 399, 810, 813 (Tex. Crim. App. 2002).

Furthermore, Appellant points us to no authority for the proposition that recording a defendant's statements to a third party constitutes interrogation, and we conclude it does not. *See Innis*, 446 U.S. at 301, 100 S. Ct. at 1689-90. Under the facts of this case, the trial court did not err in denying Appellant's motion to suppress. Accordingly, we overrule Appellant's first issue.

## EXTRANEOUS CONDUCT EVIDENCE

In his second issue, Appellant contends that the trial court erred by permitting the State to introduce extraneous conduct evidence of Appellant's actions toward another woman.

### Standard of Review and Applicable Law

An appellate court reviews a trial court's decision to admit evidence under an abuse of discretion standard. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). An appellate court must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Id.* An appellate court will not reverse a trial court's ruling admitting evidence unless that ruling falls outside the zone of reasonable disagreement. *Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001).

For evidence to be admissible, the evidence must be relevant. TEX. R. EVID. 402; *Montgomery v. State*, 810 S.W.2d 372, 375 (Tex. Crim. App. 1990). Evidence is relevant when it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX. R. EVID. 401.

Rule 404(b) of the Texas Rules of Evidence bars "[e]vidence of a crime, wrong, or other act" when that evidence is admitted to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." TEX. R. EVID. 404(b). This extraneous offense evidence may, however, be admissible for other purposes, such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id*.

Accordingly, if a defendant objects on the grounds that the evidence is not relevant, violates Rule 404(b), or constitutes an extraneous offense, the proponent must show that the evidence has relevance apart from showing character. *Rankin v. State*, 974 S.W.2d 707, 718 (Tex. Crim. App. 1998); *Montgomery*, 810 S.W.2d at 387. Evidence is relevant for Rule 404(b) purposes if it tends to (1) establish an elemental fact, (2) establish an evidentiary fact leading inferentially to an elemental fact, or (3) rebut a defensive theory. *Montgomery*, 810 S.W.2d at 387. An evidentiary fact that stands wholly unconnected to an elemental fact is not a fact of consequence and thus is not relevant. *Rankin*, 974 S.W.2d at 710. There must be an inference drawn from the evidentiary fact to an elemental fact to show how the evidence makes a "fact of consequence" in the case more or less likely. *See id*.

Extraneous offenses may be relevant to prove intent. *See Plante v. State*, 692 S.W.2d 487, 491-92 (Tex. Crim. App. 1985). To be admissible for this purpose, the extraneous offense must be sufficiently similar to the charged offense that the doctrine of chances or inference of improbability of accident logically comes into play. *Cantrell v. State*, 731 S.W.2d 84, 90 (Tex. Crim. App. 1987). Under the doctrine of chances, "it is the improbability of a like result being repeated by mere chance that gives the extraneous offense probative weight." *Brown v. State*, 96 S.W.3d 508, 512 (Tex. App.—Austin 2002, no pet.). However, the degree of similarity required in cases where intent is the material issue is not as great as in cases where identity is the material issue and the evidence is being offered to prove modus operandi. *Cantrell*, 731 S.W.2d at 90.

Extraneous offense evidence offered to prove intent is relevant "where intent is a material issue and it is not inferable from the act itself." *Rankin*, 974 S.W.2d at 719. Intent is a material issue and not inferable from the act when a defendant accused of sexual assault raises the defensive theory of consent. *See Rickerson v. State*, 138 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Extraneous offense evidence is relevant when the defendant's cross-examination of the State's witnesses places the alleged victim's consent in issue. *See id.*

Finally, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403. Rule 403 favors admissibility, and the presumption is that relevant evidence will be more probative than prejudicial. *Montgomery*, 810 S.W.2d at 389. A proper Rule 403 analysis includes, but is not limited to, four factors: (1) the probative value of the evidence, (2) the potential to impress the jury in some irrational yet indelible way, (3) the time needed to develop the evidence, and (4) the proponent's need for the evidence. *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). A trial court can minimize any impermissible inference of character conformity from evidence of extraneous offenses through a limiting instruction. *See Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996).

## Extraneous Conduct Evidence

Jean Mullins was the executive director and sole employee of the Van Zandt County Children's Advocacy Center (CAC). Mullins testified that at one time she attended the same church as Appellant. She also knew Jackson through civic organization functions.

Mullins testified that one day in 2008, Appellant stopped by the CAC and started making conversation. Mullins gave Appellant a tour of the facility. At the end of the tour, Appellant smelled and touched her from her elbow up to her neck. Mullins was shocked by Appellant's conduct. About that time, a volunteer entered the building, and Mullins walked away from Appellant.

Later, Appellant came to the CAC again unannounced. Mullins was guarded toward Appellant this time. Appellant told Mullins that she was beautiful and that he wanted to see her. Mullins told Appellant that she was not interested and that he should leave. Appellant extended his hand to apologize. When Mullins shook his hand, Appellant attempted to pull Mullins over the desk toward him. She pulled away, but Appellant went behind Mullins's desk and began licking her face and trying to kiss her. Mullins told him to stop. She was amazed at his strength, but she was able to get away from him by pushing the desk with her feet. Mullins told him to leave immediately, and he slowly and reluctantly complied.

After the second incident, Appellant drove by Mullins's house on several occasions. He also came to the CAC once more. Mullins met him in the parking lot. Appellant apologized and offered to shake her hand again, but she refused and asked him to leave.

**Analysis**

At trial, Appellant objected to the extraneous conduct evidence, arguing that its sole purpose is to show character conformity. He further argued that the evidence is prejudicial and has no probative value. The State argued that the evidence is admissible because it is relevant to identity and to rebut the defensive theory of consent. The trial court determined that the evidence is admissible because it is relevant to Appellant's intent and the defensive theory of consent. The trial court further determined that the probative value of the evidence was not outweighed by the danger of unfair prejudice.

On appeal, Appellant argues that the evidence's only purpose is to show character conformity, that it is highly prejudicial, and it has very low probative value. Moreover, he argues that the trial court could not determine the State's need for the extraneous conduct evidence based on the state of the evidence at the time it was introduced. Appellant further argues that the State spent an inordinate amount of time adducing the extraneous conduct evidence, distracting the jury from the evidence of the primary conduct. Finally, Appellant argues that because the jury heard the extraneous conduct evidence before Jackson's testimony, it could not properly weigh the evidence.

The State argues that the extraneous conduct evidence is relevant and admissible on several bases apart from character conformity. It argues that the evidence is relevant to the issues of identity, intent, and absence of mistake. The State also contends that the evidence rebuts Appellant's consent defense.

We agree with the State and the trial court that the evidence is relevant to the issue of Jackson's consent, and therefore to the issue of Appellant's intent. When the defensive theory of consent is raised, a defendant necessarily disputes his intent to perform the act without the complainant's consent, and thus his intent is placed in issue. ***Rubio v. State***, 607 S.W.2d 498, 501 (Tex. Crim. App. 1980). It is undisputed that Appellant's defensive theory at trial was that the sexual encounter with Jackson was consensual.[4]  Consequently, Jackson's consent and Appellant's intent were in issue. *See **id.*** And Mullins's testimony that Appellant forced himself on her under similar circumstances was relevant to prove Jackson's lack of consent, and thereby Appellant's intent. *See **id.***; *see also **Brown***, 96 S.W.3d at 512.

---

[4] During Appellant's cross-examination of Jackson, he implied that the sexual encounter was consensual. Later in the trial, Appellant testified and explicitly claimed that the encounter was consensual.

8

Moreover, Jackson's consent was in issue prior to the introduction of the extraneous conduct evidence. By the time the State called Mullins to the stand, Appellant had clearly raised consent as a defense through his cross-examination of the State's witnesses.[5] Steve Hall, a sergeant with the Canton Police Department, was the first to arrive at Jackson's house on the date of the offense. Appellant cross-examined Hall on the length of time that Jackson refused to talk to the police after the incident. Appellant further cross-examined Hall on the lack of any physical trauma or injuries of any kind sustained by Jackson.

On direct examination, King recounted Jackson's statement that she struggled with Appellant, but it was more of a pushing and shoving struggle. King testified that there were no signs of forced entry or of a fight inside the house. Appellant cross-examined King regarding the lack of a struggle or scuffle. Appellant further had King acknowledge that the bed on which the alleged sexual encounter occurred was made and showed no signs of a struggle. He also had King confirm that Appellant was seventy years old and Jackson was sixty years old at the time.

State's witness Enrique Guerra, Jackson's neighbor, testified that he saw a white pickup truck in front of Jackson's house. On cross-examination, Guerra testified that he never heard any screaming and did not see the truck leave in a hurry. Guerra's wife, Gloria, testified similarly.

Maggie Hudson, a registered nurse with specialized training in performing sexual assault examinations, examined Jackson. On cross-examination, Hudson testified that Jackson had no signs of injury. We conclude that Mullins's testimony was relevant when it was offered because consent was already in issue.

Beyond the consent issue, the evidence was also relevant to show how Appellant became a suspect. The investigation of the alleged sexual assault was unusual. Hall arrived first to Jackson's house. He saw Jackson crying and shaking all over, but she would not answer the door. She did not want to talk to the police about what happened. Hall spoke to two of Jackson's neighbors, and they informed him that a white pickup truck had been at Jackson's house earlier.

Jackson then spoke to her neighbors. She explained that she did not wish to discuss the incident with the police because her attacker was a prominent member of the Canton community.

---

[5] King connected Appellant with the prior alleged incidents before Mullins testified. However, he did not relate any of the details of the incidents.

9

Hall requested that King, the department's most experienced detective in investigating sexual assault crimes, assist in the investigation. After being briefed by Hall, King contacted Mullins.

Mullins had unofficially reported to King the incidents involving Appellant, but for various reasons she had refused to name him. King noticed similarities in the two women's stories and asked Mullins to speak with Jackson. Mullins asked Jackson if the incident involved a "John Mitchell," but Jackson still refused to discuss the incident. After some investigation, King asked Mullins if the name might be "John Marshall" rather than "John Mitchell." Mullins agreed that it was. Mullins spoke to Jackson again and mentioned Appellant's name. Jackson then told the police that she was sexually assaulted by Appellant.

Extraneous conduct evidence may be admissible as same transaction contextual evidence where such evidence is necessary to the jury's understanding of the instant offense. ***Rogers v. State***, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993). The evidence of the initial investigation explains how Appellant became a suspect in the case. Without such an explanation, the jury would not have understood how he became a suspect even though Jackson initially refused to name him. Thus, a basic knowledge that there had been some incident involving Appellant and Mullins was necessary to the jury's understanding of the instant offense. *See **Greene v. State***, 287 S.W.3d 277, 283 (Tex. App.—Eastland 2009, pet. ref'd) (evidence of prior arrest admissible to show how defendant became suspect in instant offense). The State and its witnesses did not go into details of the incident before Mullins testified, but merely referred to it as an "alleged incident." We conclude that the extraneous conduct evidence adduced prior to Mullins's testimony was admissible as same transaction contextual evidence. *See **id.***

We further agree that the probative value of this evidence is not substantially outweighed by any unfair prejudicial effect. Given the contested nature of the evidence and the similarities of the two situations, the probative value of the extraneous conduct evidence and the State's need for the evidence was strong. The extraneous conduct evidence was prejudicial, but not in some irrational yet indelible way. And, while the evidence did require a bit of time to develop, the time was not so long as to tilt the Rule 403 balance against admissibility. Therefore, the trial court did not err in admitting the testimony. *See **Mechler***, 153 S.W.3d at 439.

Accordingly, we overrule Appellant's second issue.

In his third issue, Appellant contends that the trial court erred by excluding Martha Wetherholt's testimony because she had personal knowledge of relevant evidence. In his fourth issue, Appellant argues that the exclusion of Wetherholt's testimony violated the Sixth and Fourteenth Amendments to the United States Constitution.

## Standard of Review and Applicable Law

We review a trial court's decision to exclude testimony under an abuse of discretion standard. *See* ***Willover v. State***, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

A criminal defendant has a Sixth Amendment right to call witnesses to testify on his behalf. *See* ***Chambers v. Mississippi***, 410 U.S. 284, 302, 93 S. Ct. 1038, 1049, 35 L. Ed. 2d 297 (1973). But the right to call witnesses is subject to rules, including "established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." ***Keller v. State***, 662 S.W.2d 362, 365 (Tex. Crim. App. 1984).

## Application

Wetherholt worked with Jackson until April 2010, about a year before the offense. Appellant wanted her to testify that Jackson had gone to parties and clubs, had boyfriends, and came in late one night when they shared a room on a business trip. Wetherholt said that Jackson's personality had changed after a devastating divorce, but she currently seemed like her old self again after her remarriage. Defense counsel told the trial court that he was trying to show that Jackson might have had "a problem." Wetherholt had no personal knowledge about Jackson's relationship with Appellant, and she had no contact with Jackson during the year prior to Jackson's incident with Appellant.

The State objected to the evidence, citing Rule 403, lack of relevance, and lack of personal knowledge. Appellant argued that excluding the evidence would deprive him of effective assistance of counsel, due process, and due course of law. He further argued that the evidence shows Jackson's state of mind at or near the time of the offense. The trial court found the actions that occurred when the two women worked together—over a year before the offense occurred—are not relevant. It excluded Wetherholt's testimony as irrelevant, not based on personal knowledge, and improper reputation and opinion testimony under Rule 412.

For evidence to be admissible, it must be relevant. Tex. R. Evid. 402; ***Montgomery***, 810 S.W.2d at 375. Appellant argues that Wetherholt's testimony was relevant to give the jury a

"complete view" of Jackson. To support his argument, he cites evidence that the State offered regarding Jackson's demeanor, habits, and sexual history. Appellant concedes that Wetherholt would not have testified to any consensual sexual relationships of Jackson. Wetherholt knew that Jackson had stayed out until the early morning hours more than a year before the incident with Appellant. Other than that, she had scant knowledge of any of Jackson's activities. We conclude that there is no evidence relevant to the charge in Wetherholt's offer of proof. Therefore, the trial court did not err in excluding Wetherholt's testimony from the trial. *See id.* Accordingly, we overrule Appellant's third and fourth issues.

## IMPROPER JURY ARGUMENT

In his fifth issue, Appellant contends that the trial court erred when it allowed the State to make an improper jury argument during the State's closing argument.

### Standard of Review and Applicable Law

Parties should use closing argument to facilitate the jury's proper analysis of the evidence presented at trial. *See Zambrano v. State*, 431 S.W.3d 162, 171 (Tex. App.—San Antonio 2014, no pet.). Proper argument consists of (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answer to argument of opposing counsel; and (4) a plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). To determine if the prosecuting attorney made an improper argument, the reviewing court must consider the entire argument in context, not merely isolated sentences. *See Rodriguez v. State*, 90 S.W.3d 340, 364 (Tex. App.—El Paso 2001, pet. ref'd). Improper argument is not a ground for reversible error unless it is either extreme or manifestly improper or injects new facts harmful to the accused. *See Zambrano*, 431 S.W.3d at 171.

### Application

During its closing argument, the State asked, "How are you supposed to act when you're being sexually assaulted? I don't know. I've never been sexually assaulted. Think in your minds how you're supposed to act when you're sexually assaulted." Appellant objected that the State's argument was improper because the State was asking the jury to put themselves in the position of the complainant. The trial court sustained Appellant's objection and instructed the jury to disregard the previous argument of the State. Appellant requested a mistrial, and the trial court denied the request.

The State then continued, "How was she supposed to act? Was she supposed to fight him? Maybe." Appellant again objected and claimed that the State was resuming the same line of argument. The trial court overruled Appellant's objection. The State again asked, "What was she supposed to do? There's a lot of could have's/should have's. In hindsight—if she testified in hindsight, she probably would have done it differently."

Appellant contends that the latter arguments were improper because the State was still asking the jurors to place themselves in Jackson's shoes. We disagree. Arguments that encourage jurors to place themselves in a victim's shoes have been held improper in certain instances, such as where jurors are told to think about how they would feel as the victim when assessing punishment. *Brandley v. State*, 691 S.W.2d 699, 712 (Tex. Crim. App. 1985). This is because such arguments serve only as a plea for jurors to abandon their objectivity. *Id.* Here, the State was simply encouraging the jurors to use their common sense and reason to evaluate the significance of Jackson's actions under the circumstances. On Appellant's cross-examination of Jackson, he attempted to show that the sexual contact was consensual by questioning her extensively about what she did and did not do to avoid the contact. Jackson testified that she had never been sexually assaulted before. She stated that perhaps she should have fought harder against Appellant, but she was in a state of shock and disbelief. The State's closing argument was properly asking the jury to make a reasonable deduction from the evidence regarding the key issue in the case: consent. The trial court did not err in overruling Appellant's objection to the State's argument.

Accordingly, we overrule Appellant's fifth issue.

### DISPOSITION

Having overruled Appellant's first, second, third, fourth, and fifth issues, we *affirm* the judgment of the trial court.

BRIAN HOYLE
Justice

Opinion delivered July 12, 2016.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

13



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

JULY 12, 2016

NO. 12-14-00368-CR

**JOHN CALVIN MARSHALL,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 294th District Court
of Van Zandt County, Texas (Tr.Ct.No. CR11-00070)

THIS CAUSE came to be heard on the appellate record and brief(s) filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*